IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PERCIVAL PARTNERS LIMITED, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:22-cv-16 (RDA/WEF) |
| ) | |
| PAA KWESI NDUOM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction and for Failure to State a Claim ("Motion"). Dkt. 42. The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendants' Motion together with their Memorandum in Support (Dkt. 43), Plaintiffs' Opposition (Dkt. 46), and Defendants' Reply (Dkt. 47), the Court GRANTS Defendants' Motion for the reasons that follow.

I. BACKGROUND[1]

Plaintiffs Percival Partners Limited and REIPLO Holdings, LLC ("Plaintiffs") filed suit in this Court alleging that Defendant Paa Kwesi Nduom and his family members, Defendants Yvonne Nduom, Nana Kweku Nduom, Edjah Nduom, and Nana Aba Nduom (collectively, the "Nduoms" or "Defendants") orchestrated a wide-ranging fraud scheme through a consortium of financial institutions that they owned in Ghana. Dkt. 39 ¶ 1.

---

[1] For purposes of considering the instant Motion, the Court accepts all facts contained within Plaintiffs' Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Among these institutions was private investment firm, Gold Coast Securities ("Gold Coast"), which offered investment banking, financial advisory, and brokerage services to both individuals and corporate clients. *Id.* Up until Gold Coast's license was revoked by Ghanaian regulators in 2019, Defendant Paa Kwesi Nduom served as the Chairman of the Board of Directors of Gold Coast while his sons, Defendants Kweku Nduom and Edjah Nduom, served as Directors of Gold Coast. *Id.*

Among Gold Coast's numerous offerings were structured microfinance investments. *Id.* ¶ 2. Investors would contribute funds to Gold Coast, which would then distribute those funds as microfinance loans to African small family businesses and individuals that needed capital. *Id.* In return, Gold Coast would return (at a guaranteed rate) the loan principal and interest back to investors. *Id.* ¶¶ 2, 32.

In 2018, Plaintiffs invested in Gold Coast's microfinance products, and Gold Coast's payment to them was due by 2020 at the latest. *Id.* ¶¶ 33-34. Plaintiffs allege that, unbeknownst to its investors, Gold Coast would solicit investor funds for its microfinance loans and then promptly wire those funds to a "secret" Virginia holding company, International Business Solutions, LLC ("IBS"),[2] which was owned by Defendants Paa Kwesi Nduom and Yvonne Nduom and run and managed by Defendant Kweku Nduom. *Id.* ¶ 2. After receiving these funds, IBS would distribute them to Paa Kwesi Nduom, Yvonne Nduom, Kweku Nduom, Nana Nduom, and Edjah Nduom, as well as to other LLCs owned by the Nduoms in the United States. *Id.* As a result of this one-way outflow of funds, Gold Coast was rendered insolvent and unable to return either principal or interest to investors including Plaintiffs. *Id.*

---

[2] IBS is also a named in the Amended Complaint as a defendant, along with John Does 1-10, who represent other entities to whom IBS or the Nduoms allegedly transferred funds received from Gold Coast. *See* Dkt. 39 ¶¶ 16-17.

Ghana's central bank, the Bank of Ghana, began investigating the Nduoms in the fall of 2019 after a number of companies that they owned, including Gold Coast, were unable to repay investors. *Id.* ¶¶ 4, 36. As part of that investigation, the Bank of Ghana found that, in a two-year period, over $62,000,000 in investor funds had been transferred from those companies to IBS. *Id.* The Bank of Ghana's report noted that these transfers were made "without any [supporting] documentation" and violated numerous Ghana laws. *Id.*

When Plaintiffs confronted the Nduoms regarding their failure to pay them back, Defendant Kweku Nduom began to negotiate with Plaintiffs as to alternative ways that the Nduoms could satisfy Gold Coast's debt. *Id.* ¶ 7. During those negotiations, Defendant Kweku Nduom allegedly assured Plaintiffs that the Nduoms planned "to pay [them] some cash as an interim measure while [they] work[ed] on a longer-term solution . . . ." *Id.* Plaintiffs assert that despite these pledges, Plaintiffs have yet to receive any money from the Nduoms. *Id.*

Consequently, Plaintiffs filed a Complaint in this Court on January 10, 2022, bringing a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961 *et seq.*, as well as a series of Virginia state-law claims for conversion, tortious interference, fraudulent conveyance, alter ego, and civil conspiracy, against the Nduoms. Dkt. 1. Plaintiffs subsequently amended their Complaint on April 4, 2022. Dkt. 39. On April 25, 2022, Defendants filed the instant Motion (Dkt. 42) along with a Memorandum in Support thereof (Dkt. 43), moving the Court to dismiss Plaintiffs' RICO claim for failure to state a claim and Plaintiffs' state-law claims for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. On May 16, 2022, Plaintiffs filed their Opposition (Dkt. 46), and on May 26, 2022, Defendants filed a Reply (Dkt. 47).

II. STANDARD OF REVIEW

A. Rule 12(b)(6) Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). To be sure, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Typically, "courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

In addition to this general pleading standard, "fraud-based claims must satisfy [Federal Rule of Civil Procedure] 9(b)'s heightened pleading standard." *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (citing *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013)). "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Id*. (quoting Fed. R. Civ. P. 9(b)). Furthermore, "lack of compliance with Rule 9(b)'s pleading requirements

4

is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savanna River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

### B. Rule 12(b)(1) Standard

Federal Rules of Civil Procedure Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction. In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is supported. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, and as Defendants do here, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* However, conclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Under this latter approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence

of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 891.

### III. ANALYSIS

#### A. Plaintiffs' RICO Claim (Count 5)

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, established four criminal offenses that proscribe certain activities involving a "pattern of racketeering activity." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 329-30 (2016); *see* 18 U.S.C. §§ 1962(a)-(d). RICO also created a civil cause of action, empowering private individuals to bring suit against those who engaged in racketeering activity thereby causing them harm. *See RJR Nabisco*, 579 U.S. at 329; § 1964(c).

The Supreme Court has held that, to recover in its action, a private RICO plaintiff must "allege and prove a domestic injury to its business or property." *RJR Nabisco*, 579 U.S. at 346. In so holding, the *RJR Nabisco* Court opined that freely permitting foreign citizens to bring RICO claims would allow them to "bypass their home countries' less generous remedies" and potentially cause "international friction." *Id.* at 347-48. Defendants argue that the RICO claim at issue here—which is based on losses alleged to have occurred in Ghana stemming from investments made in Ghana—is exactly the kind of claim that the domestic injury requirement is designed to bar. Dkt 43 at 1. This Court agrees.

Although the Supreme Court has not precisely articulated what constitutes a "domestic injury," the Court has held that the location of the injury is critical to the inquiry. *See RJR Nabisco*, 579 U.S. at 349, 354 (holding that "nothing in § 1964(c)" clearly demonstrates "that Congress intended to create a private right of action for injuries suffered outside of the United States" and dismissing RICO claims because they "rest[ed] entirely on injury suffered abroad").

Sister courts have further elaborated that the relevant inquiry "is not the location of the . . . purportedly injurious conduct but the location where the injury itself arose." *City of Almaty v. Ablyazov*, 226 F. Supp. 3d 272, 282 (S.D.N.Y. 2016) (citing *RJR Nabisco*, 579 U.S. at 349); *see also Humphrey v. GlaxoSmithKline PLC*, 905 F.3d 694, 702 (3d Cir. 2018) ("[T]here is a general consensus among the courts that have had to apply *RJR Nabisco* that the location of a RICO injury depends on where the plaintiff 'suffered the injury'— not where the injurious conduct took place.").[3] To that end, courts "ask 'two common-sense questions: (1) who became poorer, and (2) where did they become poorer.'" *City of Almaty*, 226 F. Supp. 3d at 282 (quoting *Bascunan v. Daniel Yarur ELS Amended ComplaintA*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *4 (S.D.N.Y. Sept. 28, 2016)). Furthermore, where the injury is to tangible property, the analysis "turns on the location of the property." *Kaikov v. Kaikov*, No. 19CV2521LDHRER, 2020 WL 9812923, at *8 (E.D.N.Y. Oct. 5, 2020) (citation omitted).

Defendants point to *Birim Group, LLC v. Nduom,* No. 20 C 07198, 2021 WL 5493229 (N.D. Ill. Nov. 23, 2021)—another case brought against the Nduoms under similar circumstances—as a useful comparison. There, the assignee of two Ghanaian citizens, who had allegedly lost deposits with Ghanaian financial institutions, accused the Nduoms of using "a collection of allegedly 'sham' corporations" to perpetuate a money laundering and financial fraud scheme. *Birim Grp.*, 2021 WL 5493229, at *1. In holding that the assignee had not alleged a domestic injury, the *Birim Group* court explained that the "[a]ssignors are foreign citizens with no apparent ties to the United States" who "invested their money in Ghanaian financial institutions." *Id.* at *3.

---

[3] To date, the Fourth Circuit has not outlined the precise contours of the domestic injury requirement.

This Court finds *Birim Group* to be instructive here.  Percival Partners Limited is an investment firm headquartered in Ghana and it made an investment in Gold Coast, another Ghanaian entity.  Dkt. 39 ¶¶ 19, 30.  And although Plaintiffs allege that REIPLO is the assignee of an unnamed Ghanaian-American investor, they do not allege that the assignor lives or holds her assets in the United States.  *Id.* ¶ 34.  Regardless, that assignor invested funds in Ghana with Gold Coast.  *Id.* ¶¶ 20, 34.  As was the case in *Birim Group*, the Court concludes that the harm that Plaintiffs suffered in the instant case arose when they lost money that they had invested abroad.

Plaintiffs urge the Court to shift the focus of the analysis to where the property was located at the time that the specific RICO predicate acts causing the injury were committed.  Dkt. 46 at 32-35.  And here, Plaintiffs argue, they were injured by the predicate acts when Defendants transferred Plaintiffs' money from Gold Coast in Ghana to IBS in Virginia.  *Id.*  However, Plaintiffs do not cite a single case holding that whether a domestic injury has been suffered is necessarily dependent on the underlying RICO predicate act.  Indeed, courts in other circuits have rejected similar arguments.  *See, e.g.*, *Kaikov*, 2020 WL 9812923, at *9 ("[A]lthough the misappropriation may have occurred in the United States, the focus of the RICO domestic injury requirement is not on a defendant's conduct . . . ."); *Lan Li v. Walsh*, No. 16-81871-CIV, 2017 WL 3130388, at *10 (S.D. Fla. July 24, 2017) ("Even accepting . . . that the basis of the RICO claim occurred in the United States because Defendants moved the money around in the United States and diverted funds from the Palm House real estate project, that does not change the fact that the injury was felt by Plaintiffs in their home countries.").

Ultimately, the alleged scheme to defraud in the instant case deprived investors of money originally held abroad.  Using the analytical framework advanced in *City of Almaty,* this Court

thus concludes that Plaintiffs "became poorer" in Ghana. *City of Almaty*, 226 F. Supp. 3d at 28 (citation omitted). Because Plaintiffs have failed to allege a domestic injury, the Court need not consider whether their other allegations are sufficient to state a civil RICO claim. Accordingly, Count 5 of the Amended Complaint is dismissed.

### B. Plaintiffs' State-Law Claims

Plaintiffs' Amended Complaint invokes both diversity jurisdiction and supplemental jurisdiction over the state-law claims. Dkt. 39 at ¶¶ 21-22. The Court addresses each basis for subject-matter jurisdiction in turn.

### 1. Diversity Jurisdiction

A district court has original jurisdiction over a civil action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States" or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)-(2). Section 1332 further "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

In the Amended Complaint, Plaintiffs allege that "[n]one of [Plaintiff] Percival [Partners Limited]'s principals or partners is a citizen of, or is domiciled in, the Commonwealth of Virginia or the State of Washington or the State of Georgia." Dkt. 39 ¶ 19. Plaintiffs further allege that None of REIPLO Holdings, LLC's members are citizens of, or are domiciled in, the Commonwealth of Virginia or the State of Washington or the State of Georgia. *Id.* ¶ 20.

The Court finds that these allegations are insufficient to establish Plaintiffs' citizenship for purposes of diversity jurisdiction. It is well-established that to properly allege the citizenship of a partnership or other unincorporated entity, "a party must *affirmatively* allege the citizenship

9

of each of its members." *Bostic Dev. at Lynchburg LLC v. Liberty Univ., Inc.*, No. CIV.A.6:05 CV 00013, 2005 WL 2065251, at *1 (W.D. Va. Aug. 25, 2005) (emphasis added) (citing 2-8 Moore's Federal Practice § 8.03); *see also VA C 12266 Jefferson, LLC v. Mattress Warehouse Inc.*, No. 4:14CV34, 2014 WL 5311453, at *3 (E.D. Va. Oct. 16, 2014) ("[t]o sufficiently allege the citizenships of [an LLC], a party must list the citizenships of all the members of the limited liability company." (quoting *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir.2004))). In the instant case, however, the Amended Complaint pleads a negative, merely alleging that Plaintiffs' partners and members are *not* citizens of certain states. Dkt. 39 ¶¶ 19-20. Given this pleading deficiency, there is no objective way for the Court to compare the diversity of Plaintiffs and Defendants. Accordingly, the Court concludes that Plaintiffs have failed to satisfy their burden of establishing diversity of citizenship over the state-law claims.[4]

## 2. Supplemental Jurisdiction

Having determined that Plaintiffs insufficiently alleged diversity jurisdiction over the state-law claims, the Court next turns to whether exercising supplemental jurisdiction over the state-law claims is appropriate. 28 U.S.C. § 1367 provides that a district court may decline to

---

[4] The Court further finds that Plaintiffs' failed to carry their burden to establish diversity jurisdiction over their state-law claims against the John Doe Defendants for another independent reason. "Sound authority supports the general proposition that the 'John Doe' practice is unwarranted in diversity cases." *Johnson v. Gen. Motors Corp.*, 242 F. Supp. 778, 779 (E.D. Va. 1965). Consequently, where John Doe defendants are named, "the action is subject to dismissal unless the John Does are eliminated or their citizenship affirmatively alleged." *Id.*; *see also Sandler v. W. State Hosp.*, No. 5:02CV00107, 2003 WL 22722870, at *3 (W.D.Va. Nov. 18, 2003) (where a plaintiff "fails to provide the court with any basis for determining the citizenship or identity of the John Does," it is appropriate to dismiss the John Doe defendants.). In the instant case, the Amended Complaint remains silent about the citizenship of the John Doe Defendants. Although dismissing the John Doe Defendants would typically remedy such a deficiency, doing so here would not save the state-law claims because the Court would still be unable to compare the diversity of Plaintiffs and the remaining Defendants.

exercise supplemental jurisdiction over a claim where:

> (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates the claim or claims over which the district court has original jurisdiction, *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added). The Supreme Court has instructed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).[5] Accordingly, since the Court has dismissed Plaintiffs' only federal claim, the Court deems it appropriate to also dismiss Plaintiffs' state-law claims[6] without prejudice.[7]

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion (Dkt. 42) is GRANTED. The Court dismisses Plaintiffs' RICO Claim (Count 5) for failure to state a claim

---

[5] Plaintiffs do not point to any factors that warrant a deviation from the general rule that where all federal claims have been dismissed, a federal court should decline to exercise supplemental jurisdiction over any remaining state-law claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

[6] Because the Court concludes that it does not have subject-matter jurisdiction over the state-law claims, it does not reach Defendants' alternative request to dismiss the state-law claims for failure to state a claim.

[7] The Fourth Circuit has instructed that a dismissal for lack of subject-matter jurisdiction should always be *without* prejudice. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for . . . [a] defect in subject matter jurisdiction . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

and dismisses Plaintiffs' state-law claims for lack of subject-matter jurisdiction. The Clerk is directed to forward copies of this Order to counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
February 17, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge